Melancthon S. Somers v. Commissioner. Marvin C. Ferris v. Commissioner.
Melancthon v. Commissioner
Docket Nos. 43996, 52692.
United States Tax Court
T.C. Memo 1955-199; 1955 Tax Ct. Memo LEXIS 140; 14 T.C.M. (CCH) 793; July 20, 1955
*140 Jay O. Kramer, Esq., for the petitioner in Docket No. 43996. Edward T. Tighe, Esq., for the petitioner in Docket No. 52692. Thomas R. Charshee, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion RAUM, Judge: The Commissioner determined the following deficiencies in income tax plus additions for fraud: Addition
Year
Deficiency
for Fraud
Petitioner Somers
1945
$ 3,549.19
$ 1,774.59
1946
54,288.83
27,144.42
Total
$57,838.02
$28,919.01
Petitioner Ferris
1945
$ 701.73
$ 350.87
1946
23,021.83
11,510.92
Total
$23,723.56
$11,861.79
The parties have agreed as to the disposition of certain of the disputed adjustments that gave rise to the Commissioner's determinations. Only one issue remains for adjudication in each case, and the position of each petitioner in that connection is antagonistic to that of the other. The cases were consolidated for hearing and decision. [Findings of Fact] Petitioner Somers was in the paper products business. He was the sole owner of the Madison Paper Company, a proprietorship. About 1944 petitioner Ferris approached Somers and presented to him an idea for *141 packaging certain paper napkins and selling them as handkerchiefs. Somers was impressed with the idea, and an equal partnership was formed between them in 1944 to engage in such an enterprise. The partnership was known as the Swankey Paper Products Company, and the napkins which it packaged for resale as handkerchiefs were called Swankey Hankies. On July 1, 1945, a new partnership agreement was executed for the enterprise, the principal change being the formal admission of a sister of Somers as a partner. Ferris continued to own a 50 per cent interest, but Somers' interest was divided equally between himself and his sister. This change did not affect the conduct of the business, and Somers continued to be the dominant figure in the enterprise, until its termination on June 30, 1946. Both partnerships will be referred to hereinafter as "Swankey". Ferris' one-half distributive share of the partnership profits, pursuant to the formal partnership agreements, was $8,996.84 for 1945 and $74,952.78 for 1946. There is no dispute that such amounts were actually paid to Ferris. However, Ferris contends that of those amounts he paid back almost simultaneously to Somers $2,443 for 1945 and $26,948.50 *142 for 1946. Ferris contends that such payments or "kickbacks" were made pursuant to an oral arrangement between Somers and himself, and he therefore subtracted such amounts from his distributive share of the partnership income. Somers denies that any such arrangement existed between them. The Commissioner, being unable to satisfy himself as to which petitioner was telling the truth, refused to permit Ferris to diminish his partnership income by the amounts of the alleged "kickbacks", but at the same time, in order to protect the revenues, included these amounts in Somers' gross income. [Opinion] The question before us is primarily one of credibility. The principal witnesses were Ferris and Somers themselves. We had ample opportunity to observe them on the witness stand and we have appraised their testimony in the light of the record as a whole. We are completely satisfied that Ferris told a truthful story and that Somers did not. Throughout the period in question Swankey realized a profit of $3 a gross on the packages of paper handkerchiefs which it sold. During that period paper was in short supply, and it was Somers, through the Madison Paper Company, who was able to obtain *143 the napkins which Swankey packaged and sold as handkerchiefs. Shortly after the enterprise was under way, Somers demanded that Ferris repay to Somers, out of his drawings or distributive earnings, fifty cents for each gross of Swankey Hankies sold by the partnership. Ferris protested, but his protests were futile since Somers controlled the supply of the napkins. Accordingly, Ferris acquiesced in the proposed arrangement. Ferris' evidence relating to these payments was credible and persuasive. On the other hand, Somers' testimony, in which he attempted to explain some of the alleged kickbacks as repayments of loans was lame, incredible, and unpersuasive. We do not deem it necessary to recount or discuss the evidence. Suffice it to say we have considered it fully, and are without doubt that Ferris made the payments in question to Somers in accordance with the arrangement forced upon him by Somers. Accordingly, on this issue we must hold that the Commissioner erred with respect to petitioner Ferris but correctly included these amounts in Somers' gross income. Moreover, we are also fully satisfied on this record that Somers' failure to report these amounts as income was deliberate *144 and fraudulent. The addition to tax for fraud must therefore be approved. Decisions will be entered under Rule 50.